IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **OLENYNIS VEGA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-1647-L** |
| | § | |
| **TYSON FOODS, INC.,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Tyson Foods, Inc.'s Motion for Summary Judgment (Doc. 16), filed July 16, 2020. After considering the motion, briefs, admissible summary judgment evidence, and applicable law, the court **grants** Defendant Tyson Foods, Inc.'s Motion for Summary Judgment (Doc. 16), and **dismisses with prejudice** this action.

## I. Factual and Procedural Background

Oleynis Vega ("Plaintiff" or "Ms. Vega") originally brought this personal injury action against Tyson Foods, Inc. ("Defendant" or "Tyson") in the 160th Judicial District Court, Dallas County, Texas, on May 14, 2019. On July 10, 2019, the action was removed to federal court based on diversity jurisdiction. In Plaintiff's Original Petition, Ms. Vega asserts causes of action for negligence and premises liability, and she seeks damages in the form of past and future: medical expenses, pain and suffering, mental anguish, physical impairment, and lost wages, in addition to prejudgment and postjudgment interest, and costs of court. Her claims arise from an on-the-job injury she sustained to her left hand on May 16, 2017, while working for Tyson as an assembly line meat packaging operator.

On July 16, 2020, Tyson moved for summary judgment on its affirmative defense of waiver. Tyson contends that it is entitled to judgment on Plaintiff's claims based on her election to participate in Tyson's Workplace Injury Settlement Program ("WISP"), pursuant to which "an employee automatically receives Basic Benefits and may elect to become a Participant in the program by signing the WISP Acceptance and Waiver ("Waiver") in order to receive Comprehensive Benefits if the employee sustains an injury in the course and scope of [his or her] employment." Def.'s Mot. 1-2; Def.'s App. 2-3. Tyson asserts that, by signing the Waiver on June 14, 2017, Ms. Vega elected to become a Participant in WISP with respect to the on-the-job injuries she sustained on May 16, 2017 ("the Incident") and is bound by its terms. Tyson argues that it has presented sufficient evidence to establish that the Waiver signed by Ms. Vega is enforceable under the Texas Labor Code, such that Ms. Vega settled and released all personal injury claims against Tyson arising out of the Incident and "waived any cause of action at common law or under any statute to recover damages for personal injuries, occupational disease, or death sustained in the course and scope of employment, including but not limited to claims based on negligent and grossly negligent acts or omissions." Def.'s Mot. 2.

Plaintiff does not address Tyson's contentions regarding the applicability of the Texas Labor Code to the Waiver in this case or whether its evidence is sufficient to establish the validity of the Waiver under the Texas Labor Code. Plaintiff, instead, focuses on whether the Waiver is unenforceable on two other grounds. In this regard, Plaintiff asserts that the Waiver she signed following the Incident does not preclude her from bringing the claims asserted in this case because it: (1) was procured by fraud; and (2) is not supported by valid consideration.

Tyson argues that Ms. Vega's defenses to its waiver argument based on fraudulent inducement and lack of consideration are not supported by Texas law or competent evidence.

Tyson, therefore, contends that these defenses are insufficient to raise a genuine dispute of material fact regarding the enforceability of the Waiver. Tyson also objects to and moves to strike Plaintiff's affidavit on the ground that it is a "sham affidavit" that conflicts with her prior deposition testimony.

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential

elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Discussion

### A. Waiver

Waiver is an affirmative defense. Fed. R. Civ. P. 8(c)(1). As the party alleging waiver, Tyson has the burden of proof. *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th

Cir.2009) (citing *In re State Farm Lloyds, Inc*., 170 S.W.3d 629, 634 (Tex. App.—El Paso 2005, no pet.)). While Tyson bears the ultimate burden of proof on this issue, the burden of production shifts to Ms. Vega if Tyson makes a prima facie showing that there is no genuine dispute as to the facts on which the defense is based. *See Hernandez v. Lasko Prods.*, 3:11-CV-1967-M, 2012 WL 4757898, at *2 (N.D. Tex. Oct. 5, 2012) (explaining the shifting summary judgment burdens for the affirmative defense of waiver).

To be valid under the Texas Labor Code, an employee's waiver of a cause of action against a non-subscribing employer like Tyson[1] for job-related injuries must comply with Texas Labor Code §§ 406.033(f) and (g). Subsection (f) states that a cause of action by an employee after the employee's injury may not be waived unless:

> (1) the employee voluntarily enters into the waiver with knowledge of the waiver's effect;
>
> (2) the waiver is entered into not earlier than the 10th business day after the date of the initial report of injury;
>
> (3) the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor; and
>
> (4) the waiver is in a writing under which the true intent of the parties is specifically stated in the document.

Tex. Lab. Code Ann. § 406.033(f)(1)-(4). Subsection (g) further provides that "[t]he waiver provisions under Subsection (f) must be conspicuous and appear on the face of the agreement." *Id.* § 406.033(g). Waiver provisions are "conspicuous" within the meaning of the statute if they "appear in type larger than the type contained in the body of the agreement or in contrasting colors." *Id.*

[1] It is undisputed that Tyson is a non-subscriber to the Texas Workers' Compensation Act.

Here, it is undisputed that Ms. Vega signed the Waiver; that the Waiver was entered into not less than the tenth business day after her injury was reported; that the Waiver was entered into after she received a medical evaluation from a nonemergency care provider;[2] that the Waiver provision is conspicuous within the meaning of the statute, and that her negligence and premises liability claims fall within the subject matter of the released claims. Tyson also submitted evidence to establish that Ms. Vega voluntarily executed the Waiver with knowledge of its effect,[3] which is sufficient to meet its initial burden of establishing a prima facie showing that there is no genuine dispute as to the material facts underpinning its waiver defense.

As noted, Ms. Vega does not dispute whether the Waiver in this case satisfies the Texas Labor Code. She, instead, argues that the Waiver is not enforceable because it was procured by fraud and is not supported by valid consideration. The court's remaining analysis, therefore, focuses on these arguments to determine whether Ms. Vega has established a genuine dispute of material fact regarding the enforceability of the Waiver based on her contention that it was procured by fraud and is not supported by valid consideration.

**B. Lack of Consideration**

Plaintiff contends that the Waiver lacks the requisite consideration needed to make it enforceable because "it purports to release Tyson from further liability from suit without offering anything to [her] in exchange." In this regard, Plaintiff asserts:

---

[2] Plaintiff acknowledges that she received medical treatment but contends that she has not received the "proper and adequate medical treatment for her injury" that was promised to her by Tyson if she signed the Waiver. *See* Pl.'s Resp. 5, 12, 13. Plaintiff does not dispute that, before signing the Waiver, she received a medical evaluation from a nonemergency care doctor. She also has not asserted a breach of contract claim against Tyson for failure to perform as promised in exchange for the Waiver. Plaintiff, instead, makes the contention regarding the adequacy of the medical treatment she received after signing the Waiver in support of her fraudulent inducement argument. The court, therefore, only considers this argument by Plaintiff in addressing her assertion that the Waiver is unenforceable because it was procured by fraud.

[3] *See infra* pp. 13-16.

> Under Tyson's WISP program, an employee automatically receives basic benefits and may elect to become a plan participa[nt] in order to receive [C]omprehensive [B]enefits in the event of a workplace injury. Tyson also provides [its] employees an opportunity to receive health insurance benefits through [its] employment with the company. In order to receive health insurance, a portion of an employee's paycheck is deducted to cover the health insurance. Vega opted to pay into health insurance coverage provided by Tyson and had health care coverage through Blue Cross Blue Shield ("BCBS").
>
> . . .
>
> In this particular case, there is no valid consideration, as Vega *would have been able to procure treatment for her injuries through her BCBS coverage* and did not receive an additional benefit by signing the Waiver. Without any additional benefit to Vega or detriment to Tyson, there is no valid consideration. Without valid consideration, the Waiver is legally insufficient.

Pl.'s Resp. 10-11 (footnotes omitted) (emphasis added). In other words, Plaintiff argues that, although she received Comprehensive Benefits under Tyson's WISP program after signing the Waiver, the program offered her no additional benefit in exchange for her waiver of liability because she already had personal health insurance coverage through Blue Cross Blue Shield ("BCBS"). To support the statements in the first of these two paragraphs, Plaintiff relies on her executed Waiver[4] and her affidavit[5] that she submitted in response to Defendant's motion.

"[C]onsideration sufficient to support a release must consist of either a benefit to the releaser or a detriment to the person released." *Flatt v. Hill*, 379 S.W.2d 926 (Tex. Civ. App.—Dallas 1964, writ ref'd n.r.e). Ms. Vega does not dispute that she received Comprehensive Benefits

[4] Plaintiff cites to Exhibit C of the appendix to her response.

[5] Plaintiff cites to Exhibit A and A-1 of her appendix. Exhibit A is Plaintiff's affidavit in which she similarly references Exhibit A-1 in stating that a copy of her insurance card with BCBS is attached as Exhibit A-1. Plaintiff's appendix, however, does not include an Exhibit A-1. On the other hand, the court sees from the table of contents to Plaintiff's appendix that this insurance card is included in Exhibit D. Confusion regarding the evidence relied on by Plaintiff and time spent by the court attempting to sort out such confusion could have been avoided if she had simply cited to the appropriate appendix page numbers as required by this district's Local Civil Rules, rather than citing generally to exhibits, some of which are 90 pages in length. Regardless, it is undisputed that Plaintiff had health insurance coverage through BCBS.

under the WISP program or that the treatment she received for her injury as a result of the Waiver was paid in full by Tyson. Instead, as correctly noted by Tyson, the argument that Ms. Vega received no additional benefit in exchange for her signing the Waiver is necessarily predicated on her assertion that the Comprehensive Benefits and treatment she received under the WISP program did not constitute an additional benefit because she "would have been able to procure treatment for her [workplace] injuries through her BCBS coverage." Pl.'s Resp. 11.

At most, Plaintiff's evidence shows that she had health insurance through BCBC. Plaintiff has offered no evidence that her personal health insurance through BCBS would have covered a work-related injury, or that BCBS would have provided her with the same or substantially similar coverage for such an injury at no additional cost to her. Thus, her unsupported and conclusory argument to the contrary that the Comprehensive Benefits she received under Tyson's WISP program after signing the Waiver did not constitute as an additional benefit because she already had personal health insurance coverage through Blue Cross Blue Shield ("BCBS"). Accordingly, Plaintiff's evidence is not sufficient to raise a genuine dispute of material fact in response to Defendant's waiver defense based on lack of consideration.

**C. Fraudulent Inducement**

In support of her argument that the Waiver is unenforceable because she was fraudulently induced by Tyson to sign it, Ms. Vega contends, "In exchange for signing the Waiver, Tyson represented to [her] that she would be receiving *proper and adequate* medical treatment for her injury." Pl.'s Resp. 12 (citing Ex. A [Pl.'s Aff.] & Ex. B [Pl.'s Nov. 13, 2019 Dep. Tr.]) (emphasis added).[6] Relying on her affidavit, Plaintiff further contends that:

---

[6] Plaintiff's Exhibit B is approximately 90 pages long. Plaintiff does not indicate in her response which portion of her deposition testimony or this exhibit that she is relying on to support this assertion, and it is not incumbent on the court to sift through the record to find evidence supporting Plaintiff's opposition to Defendant's summary judgment motion. *Ragas*, 136 F.3d at 458; *Skotak*, 953 F.2d at 915-16 & n.7.

> Tyson also represented to [her] that the only way to receive any medical treatment for her injury was to sign the Waiver; however, this statement is a false representation, as [she] had health insurance through her employment with Tyson and could have obtained treatment using her BCBS coverage. When [she] was told by Tyson representatives that she would not receive any treatment for her hand if she did not sign the Waiver, she believed that statement to mean she would also be precluded from using her BCBS health insurance for treatment, as her BCBS was also a benefit that she received through her employment with Tyson. Because [she] already had health insurance through BCBS, she did not understand that the [C]omprehensive WISP [B]enefits were a different type of benefit. She believed them to be the same coverage, and when she was told that she would lose all medical care for her injury if she did not sign the Waiver, she believed that she would not have access to any medical care. This in fact was not true. Had [she] not been pressured into signing the Waiver, she still could have sought treatment for her injuries through the BCBS health insurance that she paid into through her employment with Tyson. By representing to [her] that she would lose all medical treatment by refusing to sign the Waiver, Tyson representatives made a material misrepresentation of fact to [her][.]
>
> While Tyson's representatives may have been unaware that [she] had health insurance coverage [through BCBS] and may not have explicitly known that their material misrepresentation was false, the claim that [she] would not receive any treatment for her injury was certainly made recklessly without knowledge of its truth. In the alternative, had Tyson's representatives known that [she] did in fact have health insurance [through BCBS], then they would have known the falsity of their statement at the time it was relayed to [her]. While Plaintiff believes that by making the false assertion that she needed to sign the Waiver in order to receive treatment for her injury, Tyson's intent was to procure [her] signature on the Waiver, the question of intent has been found to be "uniquely within the realm" of a jury as it "so depends on the credibility of the witnesses and the weight to be given to their testimony." *Jones v. Ray Ins. Agency*, 59 S.W.3d 739, 753-54 (Tex. App.—Corpus Christi 2001, pet. [d]enied) (citing *Benoit v. Wilson*, 150 Tex. 273, 281 (1951)); therefore, this is certainly a genuine issue of material fact to be heard by a jury.

*Id.* at 12-13 (footnotes omitted). In addition, Mr. Vega contends that the Waiver was procured by fraud because "Tyson falsely represented to [her] that she would receive *proper and adequate* medical treatment for her injury if she signed the Waiver." *Id.* at 5 (emphasis added). Plaintiff asserts that, "[w]hile she did receive treatment [through the WISP program], she did not receive *proper and adequate* medical treatment for her injury." *Id*.

Plaintiff further asserts that she signed the Waiver in reliance on Tyson's false statement, and, as a result of her reliance on the false statement and decision to sign the Waiver, she has been damaged as follows:

> [She] has suffered in that she has not received the *proper* medical treatment promised to her by Tyson. To this day, she still continues to suffer from the injuries sustained in the Incident and has had to significantly alter her lifestyle to accommodate to the injuries. [She] has further suffered injury from signing the Waiver, as Tyson is now claiming that she has given up her right to seek legal redress for her injuries.

*Id.* at 13 (emphasis added).

Tyson responds that Ms. Vega's fraudulent inducement argument, which was raised for the first time in response to its summary judgment motion, is without merit because there is no competent evidence to support it. Tyson argues that the competent summary judgment evidence, instead, establishes that: (1) she admitted to reading the entire Waiver before signing it; (2) she admitted to signing the Waiver; (3) she accepted and received the Comprehensive Benefits paid solely by Tyson under the WISP program in exchange for her signing the Waiver in the form of treatment for her job-related injuries; and (4) her reading and signing the Waiver occurred on June 14, 2017, approximately one month after the Incident.  Tyson contends, as before, that Plaintiff has no evidence to support her assertion that her private health insurance through BCBS would have covered treatment for the job-related injuries she sustained to her hand. Tyson, therefore, argues that Plaintiff has not shown that any false statements in this regard were made to her.  In addition, Tyson argues that Plaintiff cannot rely on her "sham affidavit" to show that it falsely informed her that her injuries would not be covered under the personal BCBS health insurance that she had before the Incident, as this directly conflicts with her deposition testimony that no one told her this.  Def.'s Reply 6-8.

Regarding Plaintiff's argument that she has not received the *proper* medical treatment promised to her by Tyson and has incurred damages because "she continues to suffer from the injuries sustained" to her hand despite the treatment she received, Tyson responds that its motion and evidence demonstrate that she received "[C]omprehensive [B]enefits under the WISP program" and that she, therefore, has "already been compensated for her injury." *Id*. at 5.

A claim for common law fraud under Texas law requires: "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (citation and internal quotation marks omitted). "Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Id.* "[A]bsent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he [or she] signed, regardless of whether he [or she] read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005).

The court agrees with Tyson that Plaintiff's fraudulent inducement defense to the enforcement of the Waiver is flawed and fails for the same reason her lack of consideration defense fails. As with her lack of consideration argument, Ms. Vega premises her fraudulent inducement defense on the same unsubstantiated belief and assertion that she still could have sought and received treatment for her injuries through her BCBS health insurance if she had not signed the Waiver. Without evidence, however, that Ms. Vega's BCBS health insurance would have covered and provided, at no additional cost, similar coverage for the work-related injuries she sustained as a result of the Incident, her contention that Tyson representatives told her something different is insufficient to show that Tyson or its representatives made a "material misrepresentation, which

was false, and which was either known to be false when made or was asserted without knowledge of its truth. *Zorrilla*, 469 S.W.3d at 153.

Further, Plaintiff's evidence does not support her contention that the Waiver was procured by fraud or that she suffered damage as a result of promises regarding the level of treatment she would receive. As noted, Plaintiff contends in her response that "Tyson falsely represented to [her] that she would receive *proper and adequate* medical treatment for her injury if she signed the Waiver," and "[w]hile she did receive treatment, she did not receive *proper and adequate* medical treatment for her injury." *Id.* at 5 (emphasis added). Plaintiff, however, does not state in her affidavit that Tyson or its representatives represented to her that she would receive "proper and adequate" treatment for her injury. Instead, she merely states that it was "*her understanding in signing the Waiver* that Tyson [] would get me the *proper treatment* to ensure that my hand returned to normal." Pl.'s App. 4 (Pl.'s Aff. ¶ 15) (emphasis added).

Plaintiff also states in her affidavit that, in signing the Waiver, she relied on unspecified "statements Tyson [] made to her about providing the medical treatment [she] needed; however, I do not feel that they carried out their end of the bargain, as my hand is still suffering ongoing injuries as a result of the [I]ncident." *Id.* at 4 (Pl.'s Aff. ¶ 16). Again, though, there is no evidence that: Tyson ever promised to provide a particular level of treatment other than the Comprehensive Benefits provided under the WISP Program; that the treatment Plaintiff received was something other than the Comprehensive Benefits provided under the WISP Program; or that Tyson ever promised that Plaintiff's hand would "return[] to normal" as a result of the treatment she would receive under the WISP program. Plaintiff also fails to point to any portion of the WISP program documentation or the Waiver she signed to show that she was promised a level of treatment or specific outcome as a result of the treatment. As a result, the foregoing statements in Plaintiff's

affidavit that are based on her unsubstantiated belief and vague, conclusory statements that she believed she would receive "proper treatment" and was told that she would be "provid[ed] the medical treatment [she] needed" are insufficient to defeat Defendants' summary judgment motion. *See Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533. Plaintiff's contention that she was fraudulently induced to sign the Waiver is, therefore, insufficient to raise a genuine dispute of material fact regarding the validity or enforceability of the Waiver.

Having determined that Plaintiff's fraudulent inducement defense fails for the reasons stated, the court need not address in detail Tyson's alternate argument and contention regarding Plaintiff's "sham affidavit." The court agrees that the statement in Plaintiff's affidavit, that Tyson or Tyson's representative falsely informed her that her injuries would not be covered under her personal BCBS health insurance, directly conflicts with her deposition testimony that no one made such statement to her. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.") (footnote and citations omitted). "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *Id*. at 486 (citation omitted). An affidavit, however, may be not used to contradict sworn deposition testimony. *Id.* Accordingly, the court declines to consider the contradictory statement made by Ms. Vega in her affidavit.

**D. Voluntariness of Waiver**

Ms. Vega acknowledges that she read the Waiver before signing it. She, nevertheless, contends that she was confused, did not fully understand some of the technical terms, and felt pressured by an unnamed nurse. Regarding these matters, Ms. Vega states in her affidavit that:

(1) she did not fully understand some technical terms in the Waiver; (2) she was confused because she thought that the comprehensive benefits offered under the WISP program were the same as those that she already had under her personal BCBS health insurance; (3) she was in a lot of pain and felt pressured by a "male nurse" who told her "they" would discontinue treating her job-related injury if she did not sign the Waiver—she thought the nurse meant that she would no longer be able to get help for her injury through her BCBS health insurance; and (4) she "felt a little bit of pressure" because she was afraid of losing her job and was afraid she would not be able to afford medical care for her injury if she did not sign the Waiver. Pl.'s Resp. 12-13; Pl.'s App. 3-4 (Pl.'s Dep ¶¶ 8-14).

Tyson responds that, while Plaintiff has couched these assertions as "fraudulent inducement," similar arguments regarding the enforceability of a waiver based on duress were rejected by the court in *Walkup v. Tyson Foods, Inc*., 7:13-CV-0150-O, 2014 WL 4798443 (N.D. Tex. Sept. 26, 2014). Tyson asserts that the plaintiff in *Walkup* similarly argued that: (1) he was told he would be denied medical care if he failed to sign the waiver; and (2) he was implicitly threatened with firing if he did not sign. Tyson contends that, like the plaintiff in *Walkup*, Ms. Vega "has presented no evidence that she signed the wavier under duress or any false pretense." Def.'s Reply 6.

Ms. Vega does not expressly argue that the Waiver is not enforceable because she did not voluntarily sign the Waiver; nor does she argue that she signed the Waiver under duress. Instead, as noted by Defendant, all of the foregoing assertions in her response brief and the statements in her affidavit were made in support of her fraudulent inducement argument, which the court has already determined fails for the reasons explained. Because Ms. Vega did not brief what law would apply to a claim of duress or explain why the requirements for any such claim are satisfied

here, the court determines that this issue is **waived**, and it need not address whether the evidence she relies on is sufficient to establish duress and raise a genuine dispute of material fact regarding the enforceability of the Waiver she signed. *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (explaining that inadequately briefed issues are considered waived).

Likewise, she does not explain why her evidence that she was confused or did not understand certain technical terms in the Waiver is sufficient to raise a genuine dispute of material fact regarding the voluntariness of her waiver under § 406.033(f)(1). Any such argument is also **waived.** *Id.* Even assuming that she did not waive a voluntariness argument by not specifically responding to Defendant's contention and evidence regarding the voluntariness of her signing the Waiver under the Texas Labor Code, the court determines that Ms. Vega's evidence regarding her confusion and lack of understanding is insufficient to raise a genuine dispute of material fact regarding the voluntariness of her Waiver.

Section 406.033(f)(1) of the Texas Labor Code addresses the voluntariness of a waiver and, as noted, provides that a cause of action by an employee after the employee's injury may not be waived unless "the employee voluntarily enters into the waiver with knowledge of the waiver's effect." "An employee who signs a waiver has presumptive knowledge of its contents and effect under Texas Labor Code § 406.033(f)(1)." *Hernandez*, 2012 WL 4757898, at *3 (citing *Lopez v. The Garbage Man, Inc.*, No. 12-08-00384-CV, 2011 WL 1259523 at *8, 15, 18 (Tex. App.—Tyler Mar. 31, 2011, no pet.) (concluding that a person who signs a contract "is presumed as a matter of law to have read and understood the contract unless he [or she] was prevented from doing so by trick or artifice."); *see also In re McKinney*, 167 S.W.3d at 835 (explaining that, absent fraud or deceit, a party is bound by the terms of the contract he or she signed, regardless of whether he or she "read it or thought it had different terms").

Like this case, *Lopez* involved an employee waiver of liability. The *Lopez* court concluded that the presumption that an employee read and understood the waiver he or she signed applied in determining whether, under § 406.033(f)(1), an employee voluntarily entered into a waiver with knowledge of its effect. *Id.* at *18; *see also Hernandez*, 2012 WL 4757898, at *3 (same). The *Lopez* court also concluded that, as a result of this presumption, Lopez had actual knowledge of the release, and that this negated the common law fair notice requirements of conspicuousness and the express negligence rule." *Id.* at *15.

Here, the undisputed evidence is that Ms. Vega was presented with and signed the Waiver on June 14, 2017; that the Waiver was explained to her and she was provided an opportunity to ask questions before she signed it; that, before signing the Waiver, she did not ask questions regarding the matters she now says caused her confusion or did not understand; that she executed the Waiver in Spanish, her native language; that the Waiver signed by her was also witnessed and signed by Tyson's Human Resources Director; and that she continued to receive Comprehensive Benefits under the WISP program paid by Tyson as a result of the Waiver, including physical therapy and surgery, through at least January 2018, after she filed this lawsuit. Def.'s App. 3; Def.'s Reply App. Ex. H (Pl.'s Dep. 45-47, 66).

Further, the Waiver signed by Mr. Vega states:

> WAVIER AND RELEASE: In exchange for eligibility for any Comprehensive Benefits under the [WISP] Program, I HEREBY VOLUNTARILY **RELEASE, WAIVE, AND FOREVER GIVE UP ALL MY RIGHTS, CLAIMS AND CAUSES OF ACTION**, WHETHER NOW EXISTING OR ARISING IN THE FUTURE, THAT I MAY HAVE AGAINST THE COMPANY, TYSON FOODS, INC. AND THEIR PARENT, SUBSIDIARY AND AFFILIATED COMPANIES AND ALL OF THEIR OFFICERS, DIRECTORS, OWNERS, EMPLOYEES AND AGENTS THAT ARISE OUT OF OR ARE IN ANY WAY RELATED TO THE INJURIES (INCLUDING A SUBSEQUENT OR RESULTING DEATH) SUSTAINED IN THE COURSE AND SCOPE OF MY EMPLOYMENT WITH THE COMPANY. **I EXPRESSLY UNDERSTAND THAT INCLUDED IN THE CLAIMS THAT I AM RELEASING, WAIVING AND GIVING UP**

**ARE CLAIMS BASED ON NEGLIGENT OR GROSSLY NEGLIGENT ACTS OR OMISSIONS**.

Def.'s App. 9-10 (Spanish version), 38-39 (English version). The Waiver also states that "I understand" that: Comprehensive Benefits provided under the Waiver are through Tyson's WISP program, referred to in the Waiver as the "Program"; that to be entitled to Comprehensive Benefits under the WISP program, Plaintiff must waive her right to sue Tyson for "damages of any nature related to [her] on-the-job injury"; that she was electing to participate in the WISP program, knowing that her injuries and damages could be more severe than she was aware at that time she signed the Waiver; that Tyson is a non-subscriber to the Texas Workers' Compensation Act; and that signing the Waiver "is NOT a condition of my employment with [Tyson]." *Id.*

Based on this evidence, the court concludes that Plaintiff's evidence that she was pressured or confused regarding the difference between the WISP program and her personal health insurance through BCBS is insufficient to overcome the presumption in *Lopez* or establish that the Waiver she signed was procured by fraud or deceit. The conclusory statement in her affidavit that she did not understand certain unspecified technical terms is similarly insufficient to overcome the presumption in *Lopez* and *In re McKinney* that she read and understood the terms of the Waiver for purposes of defeating Defendants' summary judgment motion based on its waiver defense. *See Eason*, 73 F.3d at 1325. As a result, Plaintiff has failed to raise a genuine dispute of material fact regarding the voluntariness of her Waiver.

## IV.   Conclusion

For the reasons explained, Tyson is entitled to judgment on its affirmative defense of waiver. Accordingly, the court **grants** Defendant Tyson Foods, Inc.'s Motion for Summary Judgment (Doc. 16) and **dismisses with prejudice** this action and all claims asserted by Mr. Vega.

In accordance with Rule 58 of the Federal Rules of Civil Procedure, judgment will issue by separate document.

**It is so ordered** this 14th day of March, 2021.

Sam A. Lindsay
United States District Judge